IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

QUASAR MANAGEMENT SERVICES, LLC,

      Plaintiff,

v.

HARTFORD FIRE INSURANCE COMPANY,

      Defendant.

---

## COMPLAINT AND JURY DEMAND

---

**COMES NOW** QUASAR MANAGEMENT SERVICES, LLC, by and through its undersigned counsel, and hereby submit this its Complaint against Defendant, HARTFORD FIRE INSURANCE COMPANY, and in support of its Complaint, allege and aver as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action seeking economic and non-economic damages arising from Defendant's bad faith conduct, unreasonable delay, and unreasonable denial in the payment of covered benefits due and owing under Plaintiff's first-party insurance contract.

## PARTIES

2.      Quasar Management Services, LLC ("Plaintiff" or "Quasar Management Services") is a Colorado Limited Liability Company with its principal office in Denver, Colorado.

3.      Quasar Management Services, LLC, has one member, William C. Kephart, who is a natural person domiciled in Colorado Springs, Colorado.

4.      Defendant, Hartford Fire Insurance Company ("Defendant" or "Hartford"), is a foreign insurance company incorporated and domiciled in the state of Connecticut and maintains its principal place of business in a state other than in Colorado.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction and venue is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of the claim and the adjustment of the claim occurred in Colorado.

## FACTS COMMON TO ALL COUNTS

6.      Quasar Management Services is the owner of property that is located at 1775-1791 South Murray Boulevard, Colorado Springs, Colorado 80915 (the "Property").

7.      At all times material hereto, the roofing system covering the Property was clad with a mechanically fastened reinforced EPDM single ply roofing system installed with 3.50" polyisocynurate over a corrugated metal deck.

8.      Quasar Management Services purchased a Commercial Policy of insurance from Hartford under Policy Number 34UUNVT7760 (the "Policy").

9.      The Policy was issued with effective dates of January 1, 2016 through January 1, 2017.

10.     The Policy is an all risk policy of insurance.

11.     The Policy is a replacement cost value policy and covers loss to the Property.

12.     The Policy provides coverage for direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

13.    The Policy does not require that the Property sustain functional damage for coverage to be afforded to direct physical loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

14.    The Policy does not include a cosmetic exclusion.

15.    Under the Policy, Hartford agreed to adjust all losses with Quasar Management Services fairly and timely.

16.    Quasar Management Services paid the premiums due under the Policy in a timely manner, and performed all duties and responsibilities required of it under the Policy.

17.    On or about July 28, 2016, during the Policy period, Quasar Management Services suffered direct physical loss and/or damage at the Property resulting from hail and/or wind.

18.    The direct physical loss and/or damage resulting from the hail and/or wind constituted a covered loss under the Policy.

19.    Quasar Management Services timely reported the covered loss to Hartford, and made a claim for the direct physical loss and damage to the Property.

20.    Hartford assigned Claim Number CP0016981861 to the Property loss.

21.    Hartford assigned its adjuster, Chris Joseph, to investigate and adjust Quasar Management Services' claim for direct physical loss and/or damage to the Property resulting from the hail and/or wind storm occurring on or about July 28, 2016.

22.    Hartford retained an engineer, John Oppenheim of Donan Engineering ("Donan"), to assist in the investigation of Quasar Management Services' claim for direct physical loss and/or damage to the Property resulting from the hail and/or wind storm occurring on or about July 28, 2016.

23.    On or about September 13, 2017, Donan performed a site inspection of the Property.

24.    On or about September 19, 2016, Donan issued a report related to its site inspection ("Donan First Report").

25.    Despite numerous requests by Quasar Management Services for Donan's September 19, 2016, report, to date, Hartford has refused to provide a copy of the Donan's first report.

26.    On or about January 27, 2017, Donan performed a second site inspection of the Property.

27.    On or about March 3, 2017, Donan issued a second report related to its site inspections of the Property ("Donan Second Report"). A copy of Donan's Second Report is attached hereto as **Exhibit "A."**

28.    Donan's Second Report indicated splits, slices, and gouges up to 0.25" wide in multiple locations on the EPDM roofing surface covering the Property.

29.    Donan's Second Report indicated tears in the substrate of the EPDM roofing system covering the Property.

30.    On or about March 22, 2017, Hartford provided Quasar Management Services with its first damages estimate which outlined $51,212.27 in replacement cost value covered damages to the Property resulting from the hail and/or wind storm occurring on or about July 28, 2016. A copy of Hartford's Damage Estimate is attached hereto as **Exhibit "B."**

31.    As a result of Hartford's poor investigation, Quasar Management Services retained Pivot Adjusting ("Pivot"), a Colorado state licensed public adjusting firm, to assist in the

adjustment of Quasar Management Services' claim for direct physical loss and damage to the Property resulting from a hail and/or wind storm occurring on or about July 28, 2016.

32.     On or about March 31, 2017, Donan performed a third site inspection of the roofing system covering the Property.

33.     During its third site inspection of the roofing system covering the Property, Donan was supplied with detailed photographs of additional holes, punctures, splits, slices, and gouges observed in the EPDM roof covering and substrate at approximately eight to five separate locations.

34.     On or about April 6, 2017, Donan performed a fourth site inspection of the roofing system covering the Property.

35.     On or about April 20, 2017, Quasar Management Services representative, Pivot, provided Hartford with its first damage estimate which outlined $826,266.03 in replacement cost value covered damages. A copy of Quasar's First Damage Estimate is attached hereto as **Exhibit "C."**

36.     On or about May 14, 2017, Donan issued a third report related to its site inspections of the EPDM roofing surface covering the Property ("Donan Third Report"). A copy of Donan's Third Report is attached hereto as **Exhibit "D."**

37.     While Donan acknowledged numerous holes, punctures, splits, slices, and gouges to the EPDM roof covering. Donan's Third Report concluded these damages were not related to hailstone impact.

38.     Donan's Third Report AGAIN acknowledged tears in the substrate of the EPDM roofing system covering the Property.

39.     Donan's Third Report applied a damage threshold, 1.50" inch or larger hailstones, that does not exist within the Policy.

40.     Donan's Third Report concluded that hailstones of less than 1.50" impacted the Property, and therefore did not exceed Donan's arbitrary threshold for hailstone damage to the EPDM roofing system covering the Property.

41.     Quasar Management Services retained Roof Leak Detection Company, Inc. ("Rook Leak Detection"), to evaluate hailstone damage to the roofing system covering the Property.

42.     Roof Leak Detection performed a site inspection on or about May 16, 2017.

43.     During its site inspection, Roof Leak Detection observed hailstone strikes in the displacement of the EPDM membrane, creating small divots and gouging.

44.     During its site inspection, Roof Leak Detection performed three test square evaluations to obtain a representative sampling of hailstone impact damage on the installed roofing system covering the Property.

45.     Roof Leak Detection concluded Test Square One indicated ten hailstone impact strikes with displacement of the rubber membrane of the roofing system covering the Property.

46.     Roof Leak Detection concluded Test Square Two indicated eleven hailstone impact strikes with displacement of the rubber membrane of the roofing system covering the Property.

47.     Roof Leak Detection concluded Test Square Three indicated twelve hailstone impact strikes with displacement of the rubber membrane of the roofing system covering the Property.

48.     During its site inspection, Roof Leak Detection performed three test cut evaluations of the roofing system covering the Property.

49.     Roof Leak Detection concluded Test Cut One indicated identifiable fractures of the polyisocynurate paper facer of the roofing system covering the Property.

50.     Roof Leak Detection concluded Test Cut Two indicated identifiable fractures of the polyisocynurate paper facer and rupture of the roof membrane of the roofing system covering the Property.

51.     Roof Leak Detection concluded Test Cut Three indicated identifiable fracture of the polyisocynurate paper facer of the roofing system covering the Property.

52.     Roof Leak Detection concluded that damages were sustained to the roofing system covering Property as a direct physical result of a hailstorm event.

53.     Roof Leak Detection concluded that the hailstorm damages resulted in the diminished useful service life of the flat EPDM roofing system covering the Property.

54.     Roof Leak Detection concluded that proper remediation of the hailstorm damage to the roofing system of the Property cannot return the Property's roofing system to its pre-loss condition.

55.     Roof Leak Detection concluded that hailstorm damage to the Property's roofing system requires complete replacement of all roofing materials.

56.     On or about May 23, 2017, Quasar Management Services representative, Pivot, provided Hartford with a copy of the Roof Leak Detection Report. A copy of Roof Leak Detection's Report is attached hereto as **Exhibit "E."**

57.     On or about May 23, 2017, Quasar Management Services representative, Pivot, provided Hartford with a hail report indicating hailstones of 1.60" onsite and 1.80" within one mile of the Property during the hail and wind storm occurring on July 28, 2016.

58.     On or about May 23, 2017, Quasar Management Services representative, Pivot, requested that Hartford take into consideration objective evidence of hailstone damage to the Property resulting from the hail and wind storm occurring on or about July 28, 2016.

59.     On or about May 23, 2017, Quasar Management Services representative, Pivot, requested that Hartford reevaluate Quasar Management Services claim for direct physical loss and damage resulting from the hail and wind storm occurring on or about July 28, 2016.

60.     On or about May 26, 2017, Quasar Management Services representative, Pivot, requested Hartford provide an update as to its reevaluation based on additional information provided on May 23, 2017.

61.     On or about June 19, 2017, Quasar Management Services representative, Pivot, for a second time, requested Hartford provide an update as to its reevaluation based on additional information provided on May 23, 2017.

62.     On or about June 21, 2017, Hartford advised Quasar Management Services that it was relying upon Donan's conclusions that the roofing system covering the Property was not damaged by hail.

63.     On or about July 19, 2017, Quasar Management Services representative, Pivot, provided Hartford with its revised damage estimate which outlined $905,830.98 in replacement cost value covered damages. A copy of Quasar's Revised Damage Estimate is attached hereto as **Exhibit "F."**

64.     On or about July 26, 2017, Quasar Management Services provided formal notice of demand for appraisal as provided for under the terms and conditions of the Policy.

65.     Quasar Management Services identified its appraiser as Brian Hayden.

66.     Hartford identified its appraiser as Bret Barnett.

67.    Kevin Aguilar was agreed to as the umpire of the appraisal of Quasar Management Services' claim for direct physical loss and damage resulting from a hail and wind storm occurring on or about July 28, 2016.

68.    On or about November 8, 2017, the umpire delivered an appraisal award in the amount of $1,213,657.37. A copy of the Appraisal Award has been attached hereto as **Exhibit "G."**

69.    The appraisal award was signed by the following three individuals:

- Hartford's Appraiser – Bret Barnett
- Quasar Management Services Appraiser – Brian Haden
- Umpire – Kevin Aguilar

70.    The umpire's appraisal award is approximately $1,162,445.10 higher than Hartford's ONLY estimate of direct physical loss and damage to the Property in the amount of $51,212.27.

71.    The umpire's appraisal award is over twenty-three times higher than Hartford's ONLY estimate of direct physical loss and damage to the Property in the amount of $51,212.27.

72.    Hartford's failure to include the damages outlined in the umpire's appraisal award resulted in the delay and denial of payment of $1,162,445.10 in covered benefits without a reasonable basis.

73.    On or about December 5, 2017, Hartford issued an actual cash value payment in accordance with the appraisal award, less prior payments, in the amount of $426,743.86.

74.    The amount of the appraisal award clearly demonstrated that Hartford failed to properly investigate the full extent of Quasar Management Services' claim for damages.

75.    The amount of the appraisal award clearly demonstrated that Hartford failed to properly evaluate the full extent of Quasar Management Services' claim for damages.

76.     Hartford's delay in payment was clearly contrary to insurance industry claims handling standards, and it resulted in Quasar Management Services being deprived of the timely payment of its Policy benefits

77.     Quasar Management Services has fulfilled all duties required of it under the Policy after discovery of the loss.

78.     Quasar Management Services has performed all conditions precedent and subsequent required under the insurance Policy, or alternatively, have been excused from performance by the acts, representations, and/or conduct of Hartford.

## FIRST CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract)

79.     Quasar Management Services realleges and reaffirms Paragraphs 1-78 as if fully set forth herein.

80.     Under the Policy and Colorado law, Hartford owes Quasar Management Services the duty of good faith and fair dealing.

81.     An insurer breaches its duty of good faith and fair dealing when it engages in unfair claim settlement practices.

82.     Hartford sold Quasar Management Services the Policy at issue, the intent of which was to provide coverage for loss or damage to covered property at the premises caused by or resulting from any covered cause of loss.

83.     Hartford knew that Quasar Management Services purchased the Policy to protect its Property in the event of a loss.

84.     Hartford owed Quasar Management Services the non-delegable duty to investigate its claim objectively and not look for ways to deny benefits or attempt to not pay the full amount owed.

85.     Hartford owed Quasar Management Services the duty to give equal consideration to the financial interests of Quasar Management Services, and not give greater consideration to its own financial interests while investigation and adjusting Quasar Management Services' claim.

86.     Hartford improperly disregarded the validity of Quasar Management Services' claim for direct physical loss and damage resulting from the hail and/or wind storm occurring on or about July 28, 2016.

87.     Hartford failed to interpret its insurance policy reasonably.

88.     Hartford improperly applied a damage threshold, during its investigation, which does not exist within the Policy.

89.     Hartford failed to resolve doubts concerning insurance coverage in favor of the policyholder.

90.     Hartford failed to treat Quasar Management Services' interests with equal regard to its own.

91.     Hartford mischaracterized the facts and coverage to the benefit of itself.

92.     Hartford failed to conduct a full, fair, and prompt investigation of Quasar Management Services' claim direct physical loss and damage resulting from the hail and/or wind storm occurring on or about July 28, 2016.

93.     Hartford failed to objectively evaluate Quasar Management Services' claim based on all available evidence, and not just evidence which Hartford believed supported its position.

94.     Hartford failed to evaluate the reports received from its consultants to determine whether the consultant had conducted the necessary investigation of the claim.

95.     Hartford failed to evaluate the reports received from its consultants to determine whether the consultant had properly applied the terms and conditions of the Policy.

96.     Hartford improperly denied Quasar Management Services' claim by failing to examine and question its retained consultant's reports to assure that they contained all opinions necessary to properly evaluate the claim.

97.     Hartford improperly denied Quasar Management Services' claim by failing to examine and question its retained consultant's reports to assure that they were based on all relevant and available evidence.

98.     Hartford improperly ignored objective evidence of direct physical loss and damage resulting from the hail and/or wind storm occurring on or about July 28, 2016.

99.     Hartford ignored test cut analysis demonstrating objective hailstone damage to the roofing system covering the Property.

100.    Hartford improperly ignored test square analysis demonstrating objective hailstone damage to the roofing system covering the Property.

101.    Hartford improperly ignored weather data demonstrating hailstone impact of 1.60" onsite during the hail and wind storm occurring on or about July 28, 2016.

102.    Hartford improperly ignored weather data demonstrating hailstone impact of 1.80" within one mile of the Property during the hail and wind storm occurring on or about July 28, 2016.

103.    Hartford knew that its decision to underpay benefits owed to Quasar Management Services was intentional and not accidental.

104.    Hartford representatives, including Chris Joseph, received income-based compensation to quickly close Quasar Management Services' claim for loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

105. Hartford representatives, including Chris Joseph, received income-based compensation to reduce claims payments made to Quasar Management Services on its claim for loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

106. Hartford improperly set claims handling goals to reduce the amount paid on claims, including Quasar Management Services' claim for loss or damage to covered property at the Property caused by or resulting from any covered cause of loss.

107. Hartford improperly delayed Quasar Management Services' claim to reduce overall claims payments.

108. Hartford improperly delayed Quasar Management Services' claim to increase profits.

109. Hartford improperly delayed Quasar Management Services' claim to maintain its loss ratio.

110. Hartford improperly delayed Quasar Management Services' claim to meet department goals.

111. Hartford improperly delayed Quasar Management Services' claim by providing financial incentives to its personnel, including Chris Joseph, to influence claims handling.

112. Hartford improperly delayed Quasar Management Services' claim to reduce the average amount paid on overall claims.

113. Hartford's conduct in the handling of Quasar Management Services' claim demonstrates that Hartford was focused on benefiting itself to the detriment of Quasar Management Services.

114. Hartford has committed unfair settlement practices, including, but not limited to:

(a) Hartford has failed to acknowledge and act reasonably promptly upon communication with respect to claims arising under insurance policies;

(b) Hartford has failed to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(c) Hartford refused to pay claims without conducting a reasonable investigation based upon all available information;

(d) Hartford has failed to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

(e) Hartford has failed to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(f) Hartford has misrepresented terms and conditions of the Policy in an attempt to influence its Insured to settlement for less than all benefits reasonably afforded under the Policy for the subject loss and damage; and

(g) Hartford encourages its claims representatives to engage in unfair claims settlement practices against its Insured, thereby violating applicable laws and regulations of the State of Colorado.

115. Hartford has committed such actions willfully and with such frequency as to indicate a general business practice.

116. As a direct and proximate result of Hartford action, Quasar Management Services has:

(a) Incurred increased costs to repair, restore and/or replace the significant property damage that was caused by loss or damaged resulting from the July 28, 2016, hail and/or wind storm;

(b) Suffered damages as a proximate result of the misconduct alleged; and

(c) Suffered and will continue to suffer other expenses, including loss of pre-judgment interest, attorneys' fees, investigatory fees, and other losses.

**WHEREFORE**, Plaintiff, Quasar Management Services, LLC, respectfully requests this Court enter judgment against Defendant, Hartford Fire Insurance Company, for damages resulting from its breach of its duty of good faith and fair dealing, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
### (Unreasonable Delay and Denial of Payment of Covered Benefits Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)

117. Quasar Management Services re-alleges and reaffirms Paragraphs 1-114 as though fully set forth herein.

118.    Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

119.    Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

120.    Quasar Management Services is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115(1)(b)(1).

121.    Quasar Management Services suffered a loss covered by the Policy and submitted a claim for that loss to Hartford.

122.    The claimed loss and damage submitted by Quasar Management Services was covered by the Policy and Quasar Management Services was owed covered benefits under the Policy.

123.    Hartford delayed payment of covered benefits without a reasonable basis for its actions.

124.    Hartford denied payment of covered benefits without a reasonable basis for its actions.

125.    Hartford has unreasonably delayed covered benefits without a reasonable basis for doing so as alleged in the preceding paragraphs of Quasar Management Services' Complaint.

126.    Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by failing to properly investigate its insured's loss.

127.    Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by providing a damage estimate without having documented a reasonable investigation based upon all information.

128.    Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by providing a damage estimate which did not include all covered damages.

129.    Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by delaying the disclosure of reports relied upon to deny Quasar Management Services' claim for damages.

130.    Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by applied a damage threshold which does not exist within the Policy.

131.    Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by ignoring objective evidence of direct physical loss and damage to the Property.

132.    Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by forcing Quasar Management Services to retain its own professionals to help properly adjust the covered loss.

133.    Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by ignoring test cut analysis demonstrating objective hailstone damage to the roofing system covering the Property.

134.    Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by ignoring test square analysis demonstrating objective hailstone damage to the roofing system covering the Property.

135.    Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by ignoring reports provided by Roof Leak Detection evidencing objective covered damage to the Property.

136.    Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by ignoring weather data demonstrating hailstone impact of 1.60" onsite during the hail and wind storm occurring on or about July 28, 2016.

137.    Hartford delayed and denied payment of covered benefits without a reasonable basis for its action by ignoring weather data demonstrating hailstone impact of 1.80" within one mile of the Property during the hail and wind storm occurring on or about July 28, 2016.

138.    Despite receipt of Quasar Management Services' comprehensive estimate, Hartford delayed and denied payment of covered benefits without a reasonable basis for doing so.

139.    Hartford unreasonably delayed and denied Quasar Management Services' claim to reduce overall claims payments.

140.    Hartford unreasonably delayed and denied Quasar Management Services' claim to increase profits.

141.    Hartford unreasonably delayed and denied Quasar Management Services' claim to maintain its loss ratio.

142.    Hartford unreasonably delayed and denied Quasar Management Services' claim to meet department goals.

143.    Hartford unreasonably delayed and denied Quasar Management Services' claim by providing financial incentives to its personnel, including Chris Joseph, to determine claims handling.

144.     Hartford unreasonably delayed and denied Quasar Management Services' claim by motivating its claims department to pay less on claims, such as Quasar Management Services' claim for damages, than what is otherwise owed.

145.     Hartford unreasonably delayed and denied Quasar Management Services' claim to reduce the average amount paid on overall claims.

146.     Hartford unreasonably delayed and denied Quasar Management Services' claim by asserting coverage positions that it knew were without merit.

147.     Hartford delayed and denied payment of covered benefits without a reasonable basis for its action as evidenced by an appraisal award approximately $1,162,445.10 higher than Hartford's ONLY estimate of direct physical loss and damage to the Property in the amount of $51,212.27.

148.     Hartford delayed and denied payment of covered benefits without a reasonable basis for its action as evidenced by an appraisal award approximately twenty-three times higher than Hartford's ONLY estimate of direct physical loss and damage to the Property in the amount of $51,212.27.

149.     The actions of Hartford were intended to dissuade Quasar Management Services in pursuing benefits due and owing under the terms of the Policy.

150.     Based upon the foregoing Paragraphs is therefore entitled to two times the covered benefit, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with pre-judgment interest at the highest rate allowed by law.

**WHEREFORE**, Plaintiff, Quasar Management Services, LLC, respectfully requests this Court enter judgment against Defendant, Hartford Fire Insurance Company, for damages authorized pursuant to Colorado Revised Statute § 10-3-1116, costs, pre-judgment interest, attorneys' fees pursuant to applicable law, and other such relief as the Court deems appropriate.

## <u>REQUEST FOR JURY TRIAL</u>

151.     Quasar Management Services requests trial by jury with respect to all claims and issues triable to a jury.

Respectfully submitted this 18th day of July, 2018

/s/ Jonathan E. Bukowski
Larry E. Bache, Jr., Esq.
Colorado Bar No.: 51958
Jonathan E. Bukowski, Esq.
Colorado Bar No.: 45614
Timothy G. Burchard, II
Colorado Bar No.: 48635
Merlin Law Group, PA
1001 17th Street, Ste. 1150
Denver, CO 80202
Telephone:  720-665-9680
Facsimile:   720-665-9681
E-Mail: lbache@merlinlawgroup.com
E-Mail: jbukowski@merlinlawgroup.com
E-Mail: tburchard@merlinlawgroup.com